FILED
CLERK, U.S. DISTRICT COURT
1/10/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CDO___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>PAULINUS IHEANACHO OKORONKWO,<br>　aka "Pollie,"<br><br>　　　　Defendant. | CR No. 2:24-cr-00020-JFW<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1957: Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity; 26 U.S.C. § 7201: Tax Evasion; 18 U.S.C. § 1503(a): Obstruction of Justice; 18 U.S.C. § 982, 26 U.S.C. §§ 7301(a)-(e), 7302, 7303, 28 U.S.C. § 2461: Criminal Forfeiture] |

　　　The Grand Jury charges:

COUNTS ONE THROUGH THREE

[18 U.S.C. § 1957]

A.　INTRODUCTORY ALLEGATIONS

　　　At times relevant to this Indictment:

　　　　　Relevant Entities and Individuals

　　　1.　The Nigerian National Petroleum Corporation ("NNPC") was a state-owned and state-controlled company through which the Nigerian government exploited the country's fossil fuel and natural gas reserves, including through partnership with foreign oil companies.

2. The China Petrochemical Corporation, also known as Sinopec Group ("Sinopec Group"), a Chinese state-owned enterprise, was a petroleum, gas, and petrochemical conglomerate headquartered in Beijing, China.

3. Addax Petroleum ("Addax"), a wholly-owned subsidiary of Sinopec Group, was an international oil and gas corporation headquartered in Geneva, Switzerland, with a strategic focus on Africa and the Middle East.

4. Defendant PAULINUS IHEANACHO OKORONKWO, also known as "Pollie," was a dual citizen of the United States and Nigeria and resided within the Central District of California.

   a. Defendant OKORONKWO was an attorney admitted to the State Bar of California. In that capacity, he was the sole proprietor of the Law Office of Pollie Okoronkwo, where he practiced immigration law and personal injury matters, such as slip-and-fall and motor vehicle injury cases.

   b. Defendant OKORONKWO was also a foreign official, serving as the general manager of the NNPC's Upstream Division. In his capacity as the general manager of a state-owned and state-controlled company, defendant OKORONKWO owed a fiduciary duty to the NNPC and the people of Nigeria and was a "public official" within the meaning of Section 98D of the Criminal Code Act of Nigeria.

5. Wells Fargo Bank, N.A., and JPMorgan Chase Bank, N.A., were financial institutions whose accounts were insured by the Federal Deposit Insurance Corporation.

6. Defendant OKORONKWO was the sole authorized signer for a Wells Fargo business checking Interest on Lawyers' Trust Account in the name of "Law Office of Pollie Okoronkwo" (the "OKORONKWO IOLTA"),

a Chase business checking account ending -0717 in the name of "IPO Capital, LLC" (the "0717 IPO Capital Account"), and a Chase business checking account ending -8376 in the name of "IPO Capital, LLC" (the "8376 IPO Capital Account").

### Statutory Background

7. The crime of "official corruption" was prohibited under Section 98B of the Criminal Code Act of Nigeria, which provided:

> (1) Any person who-
>
>> (a) corruptly asks for, receives or obtains any property or benefit of any kind for himself or any other person; or
>>
>> (b) corruptly agrees or attempts to receive or obtain any property or benefit of any kind for himself or any other person,
>
> on account of-
>
>> (i) anything already done or omitted, or any favour or disfavour already shown to any person, by a public official . . . in the discharge of his official duties or in relation to any matter connected with the functions, affairs or business of a government department, public body or other organisation or institution in which the public official is serving as such; or
>>
>> (ii) anything to be afterwards done or omitted, or any favour or disfavour to be afterwards shown to any person, by a public official in the discharge of his official duties or in relation to any such matter as aforesaid,

is guilty of the felony of official corruption and is liable to imprisonment for seven years.

Official corruption constituted "specified unlawful activity" within the meaning of 18 U.S.C. § 1956(c)(7).

### Addax's Drilling Rights in Nigeria

8. In or about 1998, Addax entered into a production sharing contract with the NNPC. In or about 2001, Addax and the NNPC negotiated a "side letter" to the original production sharing contract that provided favorable fiscal terms for Addax with respect to tax and royalty payments that it was required to make to the government of Nigeria. Following negotiation of the side letter, Addax and the Nigerian government had ongoing disputes concerning the calculation of tax and royalty payments.

9. In or about 2012, after years of failing to reach an agreement, the government of Nigeria nullified the favorable fiscal terms that had been conferred in the 2001 side letter and began to recoup past benefits that had been conferred to Addax by "overlifting," i.e., keeping a greater share of the oil that Addax extracted than the quantity agreed upon. By in or about the end of August 2014, the government of Nigeria had recouped approximately $510 million in past benefits conferred on Addax.

10. Addax calculated that, if the 2001 side letter were rescinded, Addax would be obligated to repay approximately $2.76 billion for the period from 2001 to 2014 and would be deprived of approximately $2.37 billion in future benefits. Accordingly, Addax stood to incur losses in excess of $5 billion if the side letter dispute was not successfully resolved.

11. Addax filed a lawsuit in Nigeria for breach of contract against the NNPC. On May 25, 2015, in the last few days of the administration of Nigerian President Jonathan Goodluck, Addax and the NNPC entered into a settlement agreement in which the favorable financial terms of the 2001 side letter were reinstated and future liabilities that Addax faced were nullified.

12. By no later than on or about September 7, 2015, new Nigerian President Muhammadu Buhari left in place the portions of the settlement agreement resolving disputes over past benefits that Addax received but nullified the portion of the agreement that guaranteed that those terms would be kept in place going forward. Addax had calculated that the failure to apply the side letter prospectively would cost Addax approximately $2.37 billion.

### The Illegal Bribery Scheme

13. On or about October 26, 2015, Addax signed an engagement letter with the "Law Office of Pollie Okoronkwo," purportedly based in Lagos, Nigeria. Per the terms of the letter, Addax agreed to pay $5,263,157.89, including an immediate payment of $2,105,263.16, purportedly in exchange for firm's work as "Consultants for the negotiation and completion of a Settlement Agreement with NNPC" with respect to Addax's dispute over drilling rights. The engagement letter also included wiring instructions that directed payment to the OKORONKWO IOLTA. In reality, the engagement letter was a ruse intended to conceal the fact that Addax's payment to defendant OKORONKWO constituted a bribe in exchange for his influence in securing more favorable financial terms relating to Addax's extraction of crude oil in Nigeria, and the purported Lagos address for the Law Office of Pollie Okoronkwo housed a different business.

14. On or about October 28, 2015, Addax caused a bribe of approximately $2,105,263 to be transmitted to the OKORONKWO IOLTA by means of an international wire.

15. To ensure the favorable financial terms defendant OKORONKWO sought on Addax's behalf were not later revoked or revised, defendant OKORONKWO and Addax took steps to conceal from governmental authorities, auditors, and the public Addax's transfer of funds to the OKORONKWO IOLTA in the following ways:

   a. Addax falsely characterized the bribe payment to defendant OKORONKWO as a payment for legal or consulting services;

   b. To create the false impression that the bribe payment constituted client funds, defendant OKORONKWO caused the bribe payment to be sent to the OKORONKWO IOLTA, rather than a traditional personal or business account where legal or consulting income would ordinarily be deposited;

   c. On May 9, 2016, defendant OKORONKWO caused a Form 1040 Individual Income Tax Return for calendar year 2015 to be filed with the Internal Revenue Service that omitted the $2,105,263 payment from Addax to the OKORONKWO IOLTA;

   d. On July 13, 2016, after Addax's Senior Vice President of Finance questioned the propriety of the $2,105,263 payment to the OKORONKWO IOLTA, Addax terminated him;

   e. From July 2016 to November 2016, Addax knowingly provided its auditor with false information concerning the $2,105,263 payment to the OKORONKWO IOLTA; and

   f. On June 23, 2022, defendant OKORONKWO falsely told federal investigators that: (1) he did not use funds from the $2,105,263 payment from Addax to the OKORONKWO IOLTA to purchase a

house; (2) the $2,105,263 payment represented client funds rather than income to the Law Office of Pollie Okoronkwo; and (3) the money paid by Addax to the Law Office of Pollie Okoronkwo "might be" represented by the $45,000 in gross income represented in his individual tax return.  These statements were false because, as defendant OKORONKWO knew: (1) the $2,105,263 payment represented a bribe defendant OKORONKWO received from Addax in exchange for his influencing the NNPC; (2) the $2,105,263 payment did not represent client funds but rather illicit income defendant OKORONKWO received; and (3) the $45,000 in gross income represented in his individual tax return did not include the multimillion-dollar bribe payment he had received.

B.   MONETARY TRANSACTIONS

16.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant OKORONKWO, knowing that the property involved represented the proceeds of some form of unlawful activity, knowingly engaged in the following monetary transactions in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, namely, wire fraud involving deprivation of honest services, in violation of Title 18, United

//
//

States Code, Sections 1343 and 1346, and official corruption, in violation of the Criminal Code Act of Nigeria, Section 98B.

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| ONE | 11/01/2017 | Transfer of approximately $983,200 from the 0717 IPO Capital Account to the 8376 IPO Capital Account |
| TWO | 11/02/2017 | Wire transfer of approximately $500,000 from the 8376 IPO Capital Account to Glen Oaks Escrow in connection with the purchase of a house |
| THREE | 11/03/2017 | Wire transfer of approximately $483,200 from the 8376 IPO Capital Account to Glen Oaks Escrow in connection with the purchase of a house |

COUNT FOUR

[26 U.S.C. § 7201]

17. The Grand Jury realleges paragraphs 1 through 15 of this Indictment here.

18. Between in or about October 28, 2015, and in or about May 9, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant OKORONKWO willfully attempted to evade and defeat income tax due and owing to the United States of America for the calendar year 2015 by committing the following affirmative acts, among others:

   a. Intentionally failing to provide defendant OKORONKWO's tax preparer with accurate and complete information regarding the October 28, 2015, wire transfer of approximately $2,105,263 from Addax to the OKORONKWO IOLTA; the subsequent February 16, 2016, wire transfer of approximately $1,300,000 from the OKORONKWO IOLTA to the 8376 IPO Capital Account; and the February 18, 2016, deposit of a cashier's check for approximately $1,300,000 drawn on the 8376 IPO Capital Account into the 0717 IPO Capital Account; and

   b. Filing and causing to be filed with the Internal Revenue Service a Form 1040 Individual Income Tax Return for the calendar year 2015 that was false in that it failed to report as income funds defendant OKORONKWO obtained from the wire transfer of approximately $2,105,263.

COUNT FIVE

[18 U.S.C. § 1503(a)]

19. The Grand Jury realleges paragraphs 1 through 15 of this Indictment here.

20. Beginning no later than in or about 2019, the Federal Bureau of Investigation ("FBI"), later joined by the Internal Revenue Service, Criminal Investigation ("IRS-CI"), and the United States Attorney's Office for the Central District of California were conducting a federal criminal investigation of defendant OKORONKWO for federal crimes, including receipt of illegal kickback payments, engaging in monetary transactions with the proceeds of specified unlawful activity, and tax evasion (the "Federal Investigation").

21. On or about June 23, 2022, in Los Angeles County, within the Central District of California, defendant OKORONKWO corruptly endeavored to influence, obstruct, and impede the due administration of justice, namely, the Federal Investigation, by providing false information to, and withholding information from, FBI and IRS-CI. In particular, during a meeting between defendant OKORONKWO and FBI and IRS-CI, defendant OKORONKWO falsely stated that:

    a. he did not use funds from the $2,105,263 payment from Addax to the OKORONKWO IOLTA to purchase a house; and

    b. the $2,105,263 payment represented client funds rather than income to the Law Office of Pollie Okoronkwo.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

22. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of the conviction of defendant PAULINUS IHEANACHO OKORONKWO, also known as "Pollie," on any of the offenses set forth in Counts One through Three of this Indictment.

23. Defendant OKORONKWO, if so convicted, shall forfeit to the United States of America the following:

    a. Any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following:

        i. The real property located at 25340 Twin Oaks Place, Valencia, California 91381, also referred to as 25340 Twin Oaks Place, Valencia, California 91381, Assessor's Parcel No. 2826143004, more particularly described as Tract #45433, Lot 12, with an Assessor's Parcel number of 2826-143-004, as shown on the public records available in the Los Angeles County Office of the Assessor; and

    b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

24. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), defendant OKORONKWO, if so convicted, shall forfeit substitute property, if, by

11

any act or omission of defendant OKORONKWO, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.  Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

FORFEITURE ALLEGATION TWO

[[26 U.S.C. §§ 7301(a)-(e), 7302, 7303 & 28 U.S.C. § 2461(c)]

25. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, Sections 7301(a)-(e), 7302, and 7303 as well as Title 28, United States Code, Section 2461(c), in the event of defendant PAULINUS IHEANACHO OKORONKWO's conviction of the offense set forth in Count Four of this Indictment.

26. Defendant OKORONKWO, if so convicted, shall forfeit to the United States of America the following:

    a. All right, title and interest in any and all property used or intended to be used to commit any such offense;

    b. Any property sold or removed by defendant OKORONKWO in fraud of the internal revenue laws, or with design to avoid payment of such tax, or which was removed, deposited, or concealed, with intent to defraud the United States of such tax or any part thereof:

        i. The real property located at 25340 Twin Oaks Place, Valencia, California 91381, also referred to as 25340 Twin Oaks Place, Valencia, California 91381, Assessor's Parcel No. 2826143004, more particularly described as Tract #45433, Lot 12, with an Assessor's Parcel number of 2826-143-004, as shown on the public records available in the Los Angeles County Office of the Assessor; and

    c. All property manufactured into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax;

        d.    All property whatsoever, in the place or building, or any yard or enclosure, where the property described in subsection (a) or (b) is found, or which is intended to be used in the making of property described in subsection (a), with intent to defraud the United States of tax or any part thereof, on the property described in subsection (a);

        e.    All property used as a container for, or which shall have contained, property described in subsection (a) or (b);

        f.    Any property (including aircraft, vehicles, vessels, or draft animals) used to transport or for the deposit or concealment of property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

        g.    To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

27.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant OKORONKWO, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of defendant OKORONKWO, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the

//

//

jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                                  A TRUE BILL

                                                            /s/
                                                Foreperson

E. MARTIN ESTRADA
United States Attorney

*[signature]*

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

ALEXANDER B. SCHWAB
Assistant United States Attorney
Deputy Chief, Corporate &
    Securities Fraud Strike Force